Evelyn HUBNER, Appellant,

v.

Lloyd M. TUCKER, Special Agent, Internal Revenue Service, Appellee.

No. 14704.

United States Court of Appeals Ninth Circuit.

Jan. 30, 1957.

Sloane & Fisher, Robert W. Conyers, San Diego, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty., Chief, Tax Division, Robert H. Wyshak, Asst. U. S. Atty., Los Angeles, Cal. (Harry D. Steward, Howard R. Harris, Asst. U. S. Atty., San Diego, Cal., of counsel), for appellee.

Before MATHEWS and FEE, Circuit Judges, and FOLEY, District Judge.

JAMES ALGER FEE, Circuit Judge.

The previous opinion in the instant case is withdrawn upon the petition for rehearing because of the filing of opinions in Local 174, International Brotherhood of Teamsters v. United States, 9 Cir., 240 F.2d 387, and Boren v. Tucker, 9 Cir., 239 F.2d 767. We agree with the results and reasoning of both of these opinions. The present opinion is substituted to clarify our attitude, in the light of these decisions, with certain modifications and additions to meet the petition on rehearing and prevent misunderstanding. We reaffirm our former conclusions and therefore deny the petition for rehearing.

Appeal has here been taken from the judgment of the District Court adjudging that attachment against the person of Evelyn Hubner as and for contempt should be issued and said Evelyn Hubner remanded to the custody of the Marshal until she complies with an administrative subpoena issued by a Special Agent of the Internal Revenue Service and that the Special Agent who issued the subpoena "shall have the right at all reasonable times to examine said Books of Account, records and documents." [1]

The cause arose upon a petition of the Special Agent of the Internal Revenue Service to enforce an administrative subpoena [2] issued in an investigation of the

1. 26 U.S.C.A. §§ 7402, 7604.

2. "Examination of books and witnesses

"For the purpose of ascertaining the correctness of any return, making a re-

internal revenue tax liability of Clifford O. Boren and Delta M. Boren, and it was alleged in general that "said books, records, papers and data are material and relevant to said inquiry." The hearing was had before the trial judge upon affidavits. Based upon such proof, the court found that Evelyn Hubner had appeared in response to the subpoena, but had failed, neglected and refused to produce any records. It was also found that said Evelyn Hubner was executrix of the estate of her husband, Elmer J. Hubner, deceased.

The contentions of Evelyn Hubner are, first, that she was entitled to notice before her papers relating to her own tax liability were examined for a second time, second, that the examination of all papers in her possession in her own right and as executrix of the estate of her husband, for the purpose of discovering whether fraud had been committed by the Borens, was a violation of her right against unlawful search and seizure, absent a showing that the particular document was relevant to the inquiry and that the demand was not unreasonable as to her personally or as executrix, and,

third, that she was not required to produce evidence against herself.

■ The vital point upon which our conclusions are based is that the order directing production was not limited to specific documents designated and described as in the possession of Mrs. Hubner, but, on the other hand, enforced a general warrant of search and seizure[3] as a result of the failure to designate the documents and to define in which capacity, individually or as executrix, Mrs. Hubner held any particular document. She was thereby deprived of her right, as a third person not under investigation, to urge that some of the documents not relevant or material to the inquiry were in her personal possession, care or control, that the production thereof would tend to degrade or incriminate her, and that thus she was required to produce evidence against herself. Upon this point, the decision here is based. But other preliminary points must be discussed.

■ As to the first question, the learned trial judge was correct in holding that § 7605(b) did not apply here.[4]

---

turn where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized——

"(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

"(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

"(3) To take such testimony of the person concerned, under oath, as may be rel-

evant or material to such inquiry." 26 U.S.C.A. § 7602.

3. There is no attempt here to engraft judicial limitations upon the administrative process, but the statutory authorization must be strictly pursued and due process and other constitutional guaranties must be accorded a stranger to the proceeding. Cases dealing with other situations such as United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401, Jones v. Securities & Exchange Commission, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015, and United States v. Morgan, 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211, may be disregarded, as they throw no light on the problem under discussion.

4. "Restrictions on examination of taxpayer.—No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary." 26 U.S.C.A. § 7605(b).

**39**

It was held that the "taxpayer" referred to in that section is the one whose return is under investigation. The showing made by the Special Agent expressly disclaimed any intention of reexamining the papers in reference to any tax liability of Evelyn Hubner. But this very representation of the Internal Revenue Service places her in the category of third persons not connected with the investigation. Such persons have rights of their own.

■■ The Special Agent is proceeding under a general statute which has application to this individual only under limited circumstances. There is no attempt here to deny the paramount power of the government to collect taxes. But Evelyn Hubner, in her personal capacity or as executrix, was not ostensibly the subject of the investigation. By definition, the attempt was to examine into the tax liability of Clifford O. and Delta M. Boren.[5] The executive agency itself is strictly limited by the statute and by the constitutional guaranties in such a situation. Furthermore, the agency is not the arm of a court, as is a grand jury.[6] To enforce process of the Special Agent, resort must be had to an independent judicial proceeding which is characterized as a case or controversy. The executive agency would not have authority over Evelyn Hubner unless it could be established that she had custody of particular papers and that some of these were material or relevant to the tax liability of the Borens. A blanket order of production of all papers there-

fore had no proper foundation because she had no opportunity to claim her constitutional rights as to such papers en masse.

■ Far from denying a third party the right to raise the question of materiality or relevancy, we hold that, as to a stranger to the controversy whose tax liability was not apparently in question, the Special Agent had no right to examine any paper unless it was proven to have therein an entry relating to the tax liability of the Borens. The statute granting the authority to require production expressly so provides. No order to produce was properly found which was supported by adequate proof to that effect. If it be objected that these technical requirements make enforcement of the demands of an administrative subpoena a game, it may be countered that the constitutional guaranty requires that adequate protection be given to a third party against a general search and seizure. The very statute under which the Special Agent claims to act expressly provides for this protection.

This situation is further complicated by the failure of the Special Agent to allege in the subpoena and prove, if challenged, whether Evelyn Hubner held a particular paper as an individual or as executrix of the estate of Elmer J. Hubner, deceased. The challenge here is not to the admitted power paramount of the United States to collect the revenue, but to require the Special Agent to establish jurisdiction over Evelyn Hubner or Eve-

---

5. As has been heretofore pointed out, cases dealing with the taxpayer himself are to be distinguished since express statutory authority is given as to him. As to a taxpayer, " 'It is strictly inquisitorial, justifiable because all the facts are in the taxpayer's hands.' " In re Albert Lindley Lee Memorial Hospital, 2 Cir., 209 F.2d 122, 123. Similarly inapplicable are: Falsone v. United States, 5 Cir., 205 F.2d 734, turning as it does on the attempted assertion of an accountant-client privilege; United States v. Peoples Deposit Bank & Trust Co., D.C., 112 F. Supp. 720, affirmed 6 Cir., 212 F.2d 86, wherein defendant made none of the ob-

jections to the subpoena which were made in the instant case.

6. The use of United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542, as an authority in this type of case is unjustified. The grand jury is an instrumentality of a court, which has general jurisdiction over crimes supposed or alleged to have been committed. An executive agency has no such power. The agency is bound by the limitations of the statute. The grand jury is untrammeled in investigating federal crimes within the District so long as due process and other constitutional guaranties are accorded witnesses and defendants, without limit.

lyn Hubner as executrix of the estate of Elmer J. Hubner, deceased, by showing that one or the other was a "person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax." [7]  Although Mrs. Hubner admitted possession of papers belonging to the former partnership and former corporation, she was never required to produce a particular document as to which she might assert her personal rights.

Appellant is an individual and a part of the general public.  The papers which she held personally were of interest to her and she had a right to privacy therein.  Likewise, she was the executrix of the estate of her husband and some documents may have been held by her as an adjunct of the state probate court.  It would seem that, before there should be any examination of such papers, the consent of the state court should have been asked by her for her protection, since, unquestionably, the interests of the estate of the deceased, Elmer J. Hubner, were involved.  It may well be that, as to papers which she held as executrix, she was in a less favorable position to refuse to produce than those which she herself owned or held.

On the other hand, it may be that, by demise of the corporation and dissolution of the partnership, Evelyn Hubner became the owner and entitled to the possession of all of these documents.  In such circumstances, she would be an utter stranger to the proceedings.  She would then have the right of privacy and could raise the question of constitutional protection as to each document.  The Bureau of Internal Revenue would have no right to investigate the personal liability of Evelyn Hubner, either civilly or criminally, under guise of an investigation of the Borens.  Be that as it may, the blanket demand of the subpoena and the blanket direction of the order to produce, since no distinctions were made as to custody, care or possession or materiality or relevancy as to particular documents, vitiated the effect of each.

Her constitutional right of privacy she never had an opportunity to assert as to designated documents.

The original subpoena in the case called for her to produce:

"Books of account of the partnership known as the Hubner Building Company and the corporation known as the Hubner Building Company relating to transactions had by that partnership and corporation with the above-named Clifford O. Boren and Delta M. Boren for the years above stated, together with paid checks, invoices, correspondence, and any and all miscellaneous records, data, and memoranda relating to transactions between the Hubner Building Company and the above-named taxpayers."

It is objected that the papers demanded were those of a corporation which had no right to resist.  It is unnecessary to pass upon this question, although there is grave doubt of the validity of the proposition in these circumstances.  Here the corporation had been dissolved and the ownership and custody of its papers were in an individual or perhaps a probate court.  There was no segregation either by the Special Agent in the subpoena or the trial court in the order to produce between the papers formerly belonging to a dissolved partnership and the papers formerly belonging to the demised corporation.  On this ground again the order to produce was far too broad and her right to personal protection was violated.

There was no specification, therefore, of the particular documents, and this precluded a showing that any one of the documents was relevant to the issue with regard to the Borens.  As we have previously held, this matter of relevance is one which is not satisfied by a mere declaration of the Special Agent of the Internal Revenue Service, nor is the materiality of any such document so established.[8]

Although we have never said that the procedures below outlined

7. 26 U.S.C.A. § 7602(2).

8. See Local 174, International Brother-

should be required in every case, still in this particular situation a great deal of trouble and confusion could have been saved if witnesses could have been called somewhere and sometime upon the key points which the Special Agent must establish his power to act as to the stranger, Evelyn Hubner, and as to the subject matter. In our opinion, the proper method for the Internal Revenue Service to proceed should have been to call the appellant Evelyn Hubner before the Commissioner and examine her as to what documents she had in her possession and in what capacity she held them and as to whether or not any entries were contained therein which related to the controversy with the Borens. Thereafter, specification of the documents or the particular entry could have been made in an appropriate administrative subpoena and the relevancy or materiality thereof might then have been established. It would also have been necessary for the Bureau to establish in court that the production of the particular document was not unreasonable or oppressive so far as Evelyn Hubner, herself or in her capacity as executrix, was concerned.

It has heretofore been held that, so far as a member of the general public is concerned, not a taxpayer, the privilege against an unreasonable search and seizure should be given great effect.[9] Echoes of the American Revolution are found in this protest against a general warrant which permits the search and seizure of all the papers of an individual. We do not believe that, simply because some taxpayer may have had a grocery account entered upon the books of the grocer, the intention of Congress was to allow the Internal Revenue Service to investigate all the records of the grocer on the theory that some of them might be relevant to the inquiry of the tax status of another person. In this state of facts, the determination must be made by one of three persons as to whether any particular document is relevant or material to the inquiry and that the production is not unreasonable or oppressive as to the individual from whom it is sought. This determination must be made either by a Special Agent or the taxpayer or the trial court.

We hold that, where a controversy between the revenue agency and a third party has arisen, the trial court must make a finding on the jurisdictional matters based upon a preponderance of evidence adduced by the Internal Revenue Service.

This brings us to the question of hearing. A hearing was held in this case, and the trial court carefully considered the contentions of Evelyn Hubner.[10] But the hearing did not go far enough to justify the order for contempt. There is no doubt that the trial court was correct in ordering Evelyn Hubner to testify, but, as we understand the record, there was no question about her willingness to testify in general and she did not refuse to answer any particular question that was directed to her. Likewise, we believe the trial court had the right to order her to produce particular, identified documents in court. The question of whether or not the description of a document was particular enough is not discussed. The trial court could not, however, make a valid, blanket order for a person to produce all books and papers, including pay checks, invoices, correspondence and any and all miscellaneous records, data and memoranda and direct all these without designation or segregation be turned over to the Internal Revenue agents without trying the questions of whether these were material or relevant to the inquiry and were not in violation of the rights of Evelyn Hubner, individually or as executrix.[11] Neither the Internal Revenue Bureau nor the

hood of Teamsters v. United States, 9 Cir., 240 F.2d 387; Martin v. Chandis Securities Co., 9 Cir., 128 F.2d 731, affirming, D.C., 33 F.Supp. 478.

9. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652.

10. Tucker v. Hubner, D.C., 129 F.Supp. 110.

11. It has long been held that a determination of the materiality and relevancy of documents summoned under subpoena duces tecum connotes personal inspection

court had the right to cast upon Evelyn Hubner the determination of whether or not the documents were relevant or material. Evelyn Hubner did not stand upon this ground specifically, but on the ground that the demand, under the circumstances, was unreasonable, which unquestionably includes this burden. However, the trial court directed that all these papers be produced in court. It is possible that this order could have been upheld. Therefore, if the intention of the trial court had been to determine after the papers had been produced in court the two key questions posed above, this plan was not brought to consummation. On these key points, the distinctions between other cases relied upon are apparent.

The situation is entirely different from that in the case of Boren v. Tucker, 9 Cir., 239 F.2d 767. There the Borens were the taxpayers under investigation. They were not charged as custodians. The final order of contempt was based upon the failure to produce certain specified documents which the trial court had found expressly were material and relevant to the inquiry as to the tax liability of the Borens. No claim was made by either of those against whom the subpoena was directed that either would be incriminated or degraded by the production of any document demanded.

Local 174, International Brotherhood of Teamsters v. United States, 9 Cir., 240 F.2d 387, does not differ materially from the case at bar. There no proof of materiality or relevancy was presented as to particular documents, nor even of possession by the supposed custodian. However, none of the persons against whom the subpoena was directed made claim that the production of any of the documents might degrade or incriminate him.

The final order of the court from which appeal was taken proves that it was not the intention simply that the trial court might pass upon questions of materiality or relevancy, for after ordering Evelyn Hubner to deliver "to the clerk of this court" the papers so generally described as above, the following paragraph was set up:

"It Is Further Ordered that upon delivery of these Books of Account, records and other documents that agents of the Internal Revenue Service and agents of the respondent shall have the right at all reasonable times to examine said Books of Account, records and documents and may have photostatic copies of the same or any portion thereof by designation to the Clerk who shall use the facilities of the office of the Clerk of this Court for making such photostats."

■■■■■■ The order holding Evelyn Hubner in contempt for refusal to obey this blanket order was therefore void. The trial court had gone too far in ordering these papers to be produced and examined by the Internal Revenue Service under the aegis of the court. A hearing must have been held in which the questions above outlined were first determined before the papers could have been turned over to the Internal Revenue Service for inspection. At that time the other questions raised by Evelyn Hubner could have been considered as to each particular document. There might have been many documents to which the privilege against self incrimination might not apply and as to which she would not have claimed it. The court was right in refusing to give weight to this objection when applied to the mass of documents unspecified which she had in her possession. After it was determined whether the document itself was relevant or ma-

by the trial Judge. United States v. Hunter, D.C., 15 F. 712. In Edison Electric Light Co. v. United States Electric Lighting Co., C.C., 44 F. 294, 296, the court held that the question of relevancy "should not be determined upon applica-

tion to produce the papers. The court should pass upon it with the proposed evidence before it, so that it may act intelligently." 44 F. 294, 296. See also Wigmore on Evidence, Third Edition, Volume VIII, § 2200.

terial and its production was not unreasonable and oppressive as to Evelyn Hubner in either of her capacities, then the objection on the ground of self incrimination as to the particular document might have been claimed at the time.

It may have been said that this places an unreasonable burden upon the trial court, but the right of the individual citizen to privacy as against general warrants of search and seizure of private papers is entitled to special protection in the courts. Such care is exercised at all times as regards papers offered in a criminal case against a defendant. It should no less be accorded in this case, and the courts should not object to the burden. It is always perfectly possible that a general search of private papers of a personal nature might disclose evidence of crime totally unconnected with the subject matter and which the authorities would feel free to prosecute on the ground that the evidence had been secured in the prosecution of civil liability of someone not connected with the subject of search.

The order holding Evelyn Hubner in contempt is set aside and the cause remanded for further proceedings in accordance with this opinion.

The petition for rehearing is denied.