UNITED STATES of America and Joseph D. Henry, Jr., and Kenneth G. Myers, Special Agents Internal Revenue Service, Petitioners,

v.

Charles F. WOOD, Respondent.

No. C 76–0416 L(B).

United States District Court,
W. D. Kentucky,
Louisville Division.

Aug. 15, 1977.

---

872

George J. Long, U. S. Atty., Louisville, Ky., for petitioners.

William T. Warner, Kenneth J. Sorensen, Louisville, Ky., for respondent.

## MEMORANDUM OPINION

ALLEN, District Judge.

This matter is before this Court upon petition of the United States pursuant to 26 U.S.C. Sec. 7402(b) and Sec. 7604 to judicially enforce an Internal Revenue Summons directing respondent (the attorney for the taxpayers) to appear to testify and to produce for examination certain books, records and papers presently in his possession. Motion by taxpayers, Albert Ray Neely and James Giles to intervene as individuals pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, is also pending.

In accordance with 26 U.S.C. Sec. 7602, the IRS is authorized to issue administrative summonses during a tax investigation. Under this section of the Internal Revenue Code, "For the purpose of ascertaining the correctness of any return", a summons may be issued to "examine any books, papers, records or other data which may be relevant or material . . . .", regardless of whether the records are in possession of the taxpayer himself or any other person having possession of the records.

The IRS has no direct power to enforce a summons whenever a party objects. The method by which the IRS must seek enforcement against such objections is by court enforcement of the summons pursuant to 26 U.S.C. § 7604(a). Jurisdiction of this Court is further established by 26 U.S.C. § 7402(b).

It is important to note that this summons, being issued February 13, 1976, and this petition to enforce, being filed September 22, 1976, are not subject to the new provisions of the 1976 Tax Reform Act pertaining to issuance of IRS summons. The new provisions apply to summons issued after February 28, 1977 (See Public Law 94-528, Oct. 17, 1976).

This particular summons seeks all records of, and work papers relating to, the 1970 operations of the business partnership of Ray Neely and James Giles presently held by the respondent, Mr. Wood. The material is sought to assist the IRS in its investigation of these individuals' correct tax liabilities for the year 1970.

Mr. Neely and Mr. Giles are seeking intervention to protect an alleged interest in the documents. Mr. Wood, as their attorney, is in possession of the material for use relating to the filing and prosecution of a tax refund suit against the United States entitled *Giles Industries Inc. v. United States*, Ct.Cl. No. 287–75.

The events leading to the filing of this action began on February 13, 1976, when petitioners, special agents Joseph D. Henry, Jr. and Kenneth G. Myers of the IRS office in Knoxville, Tennessee, caused summons to be issued to Mr. Wood following a determination by the Kentucky District Office that $20,000.00 in deteriorating currency had been deposited in a partnership bank account of Mr. Neely and Mr. Giles.

Special Agent Myers stated at a hearing by deposition that the $20,000 was not shown on the 1970 partnership return as an income item and that he was in need of the documents held by the respondent to determine why this sum of money was not reported. He further stated that no criminal prosecution had been recommended. (Myers Tr. pp. 18–45).

On February 24, 1976, the respondent made an appearance as specified by the summons, but he did not provide any of the records or work papers listed. Consequently, on September 22, 1976, this action was filed seeking judicial enforcement of the summons.

The testimony further provides that the Neely-Giles partnership is conducted on an informal basis with Mr. Neely and Mr. Giles as its sole partners. There has been no formal written partnership agreement, nor has the partnership ever maintained an of-

fice. The partners have never held themselves out as doing business as a partnership, nor have they ever maintained a set of books of accounts. The partnership maintains its own bank account and files partnership returns. All costs and profits are split on a fifty-fifty basis. The record further indicates that Mr. Giles and Mr. Neely are in the business of selling mobile homes through a corporation known as Giles Industries of Middlesboro, Kentucky. There is no property formally listed in the partnership name; however, Mr. Giles and Mr. Neely buy and sell cattle, and own and supply a 150-acre farm titled in their names and in their wives' names. The parties have also engaged in real estate transactions through the sale of homes which they built upon land they purchased.

The sole issues presented for determination by this Court are: (1) whether or not Mr. Giles and Mr. Neely should be permitted to intervene; and (2) whether or not the IRS summons should be enforced.

Speaking to this first issue, Mr. Giles and Mr. Neely contend that the partnership records are their personal property and, as such, they have a sufficient proprietary interest in the material enabling them to intervene so that they may protect their Fifth Amendment Constitutional rights which may be violated by forced disclosure. The basis for their contention is founded upon the parties application of language contained in *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974), and *Donaldson v. U. S.*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). Upon review of these cases, this Court is not able to accept the parties application of the language contained therein to the facts of this case. The reasoning of the intervening parties for their motion to intervene has clearly failed to hit its mark.

■ *Donaldson v. U.S.*, supra, is generally regarded as the leading authority concerning a taxpayer's right to intervene in an IRS summons enforcement proceeding directed against a third party. The Court determined that a taxpayer may not intervene as of right simply because it is his tax

liability that is the subject of the summons. One must establish that he has a "significantly protectable interest" before he can intervene as a matter of right within the meaning of Rule 24(a)(2) F.R.Civ.P.

■ Mr. Giles and Mr. Neely, relying on dictum contained in the Bellis case, contend that their interest in these partnership records is a significantly protectable interest. The opinion in *Bellis v. U.S.*, supra, provides that partners in a partnership which possess an "organized institutional identity" do not have a personal interest in partnership records sufficient to be protected from forced disclosure by the Fifth Amendment. The Court concluded in dictum that a different ruling might result if a small family partnership was involved. Looking to several of the indicators used in the *Bellis* decision to establish that a partnership has an organized institutional identity, it is apparent that Mr. Neely and Mr. Giles do not have the type of small family partnership which the dictum in *Bellis* may have envisioned. Though this partnership is small, their association has not been a temporary arrangement set up to engage in a few short-lived projects. Rather, they have been partners for over 12 years involved in a variety of business adventures; selling mobile homes, buying and selling cattle, maintaining a large farm and, in the past, they have built and sold homes. The existence of a separate bank account for the partnership, the fact that separate partnership records were maintained, along with the fact that cost and profits of the partnership were split on a fifty-fifty basis and that partnership returns were filed, all indicate that this partnership had an established institutional identity. On the basis of these considerations, this Court will not accept the argument that Mr. Giles and Mr. Neely have established their right to intervene on the premise that theirs is a small family partnership, granting them a significantly protectable Fifth Amendment interest in these records to be protected against the forced disclosure of an IRS summons enforcement proceeding.

Furthermore, under Internal Revenue Code Section 7601, 26 U.S.C. Sec. 7601, the IRS may proceed to inquire into and concerning all persons, "who may be liable to pay any internal revenue tax". This, it has been said, "flatly imposes upon the Secretary the duty to canvass and to inquire", *Donaldson v. U.S.*, supra at p. 539, 91 S.Ct. at p. 539.

In the case of *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542, Mr. Justice Murphy believed that:

> ". . . individuals, when acting as representatives of a collective group, cannot be said to be exercising their personal rights and duties nor to be entitled to their purely personal privileges. Rather, they assume the rights, duties and privileges of the artificial entity or association of which they are agents or officers and they are bound by its obligations".

In the same opinion Justice Murphy went on to say that, "the framers of the constitutional guarantee against compulsory self-disclosure, who were interested primarily in protecting individual civil liberties, cannot be said to have intended the privilege to be available to protect economic or other interest of such organizations so as to nullify appropriate governmental regulations".

 This Court is satisfied that, as applied to this case, the legislative intent and purpose of 26 U.S.C. § 7601 is a necessary and legitimate one. Therefore, Mr. Giles and Mr. Neely will not be allowed to intervene and needlessly avoid the IRS investigatory move when it is clear that they are simply trying to escape the consequences of a legitimate investigation by an unmeritorious claim that these partnership records are their personal records.

The respondents' chief defenses to enforcement of the summons are: (1) the summons is part of a second inspection of the 1970 return, in violation of 26 U.S.C. Sec. 7605(b); (2) the documents sought are protected by the attorney-client privilege and are a part of the attorney's work product; (3) the documents sought are the personal records of taxpayers and, as such, forced disclosure is proscribed by the Fifth Amendment. The respondent has raised other issues in defense which are deemed to be without merit and therefore do not warrant further discussion.

Speaking to respondent's first defense, the record discloses that Special Agent Billy Shannon conducted an investigation of the individual tax liability of Mr. Neely for 1971. In carrying out this investigation Mr. Shannon said he inspected Mr. Neely's 1970 and 1972 tax returns and that he viewed a December, 1970 bank statement of Mr. Neely. The language contained in the summons which respondent contends seeks a second inspection states: "all records of, and workpapers relating to, the 1970 operation of the business partnership described as 'Ray Neely and James Giles' " . . . . Internal Revenue Service Summons. *U. S., et al. v. Wood*, 435 F.Supp. 870, issued Feb. 13, 1976.

This section of the Internal Revenue Code, 26 U.S.C. § 7605(b), provides in significant part: "No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year . . . ."

 It is appropriate for this Court to take a narrow construction of the unambiguous language of this provision. Therefore, it may be said that 26 U.S.C. § 7605(b) does not apply to a third person other than the taxpayer. *Bouschor v. United States*, 316 F.2d 451 (C.A. 8, 1963). Clearly then, respondent is the improper party to raise 26 U.S.C. § 7605(b) as a defense to enforcement of this summons since he is not the taxpayer who was the subject of the previous investigation.

 It must further be pointed out that the primary purpose of this provision in the Code is simply to emphasize the responsibility of agents to use good judgment in the exercise of the extensive powers of investigation granted them by the Code and to insure that the information sought is not already before the Commissioner. Also, there is no indication in the legislative history of this provision that it was the intent

of the Congress to have the courts oversee the decisions to investigate made by the IRS. *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Furthermore, it is said in *Summers v. Looker*, 231 F.Supp. 513 (D.C.W.V.1964), that it is the obvious aim of this legislation to prevent "repetitious fishing expeditions into a taxpayer's books, with the resultant inconvenience and harassment to the taxpayer, with reference to taxpayer's own annual income tax liability."

█ This Court is certain that under the facts of this matter the IRS has in no way violated the purpose or intent of 26 U.S.C. § 7605(b) by an investigation of the material which is the subject of this summons. There is no indication that the IRS has abused its powers in conducting this investigation. Also, the information sought by this summons pertains to records of the Neely-Giles partnership and not to the individual income tax returns of Mr. Neely which were the subject of Special Agent Shannon's initial investigation. Therefore, the information sought by the summons is not already before the commissioner. Finally, it is apparent that the IRS has a legitimate purpose in conducting this investigation of the "Neely-Giles partnership" work papers and that this is not a repetitious fishing expedition designed to harass the taxpayer. So, for these reasons, there is no legal justification for this Court to impede the investigatory power of the IRS on the basis of respondent's reliance on 26 U.S.C. § 7605(b).

Having held that the taxpayers have no personal interest in the work papers sought by this summons, respondents only remaining defenses fall within the language of *Fisher v. United States, United States v. Kasmir*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

█ As to the question of whether or not the attorney-client privilege applies to documents in the hands of an attorney, the Court in *Fisher* has said, "since the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose.

Accordingly, it protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege". More specifically, the purpose of the privilege is to encourage confidential disclosures by a client to an attorney to enable the client to gain legal assistance. However, as restated in *Fisher*, when existing documents could have been obtained by court process from the client while he was in possession, then they may also be obtained from the attorney by similar process following the transfer from the client to his attorney in order to obtain more informed legal advice. Thus, the question to be answered here is whether or not these documents would be protected from disclosure by court process if they were in the hands of the taxpayer. The only possible protection against disclosure of these documents which the taxpayers could assert is the 5th Amendment protection. The Fifth Amendment applies only when one is forced to make testimonial communications that are incriminating. Accordingly, the opinion in *Fisher* states:

"the Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by his own compelled testimonial communications."

█ Thus, the partnership records sought by this action are not testimonial communications and, if the records were in the hands of these taxpayers, they would not be immune from forced disclosure through court process. Therefore, it is now equally appropriate to say that the documents in the hands of respondent are not immune from forced disclosure by a claim of attorney-client privilege.

The opinion in *Fisher* follows a like path of reasoning previously adopted by the Sixth Circuit wherein issues similar to those presented by this matter were discussed. Addressing the issue of whether or not an attorney may assert the Fifth Amendment privilege in behalf of his client, the Court held, "(t)he Fifth Amendment privilege against self-incrimination has been characterized as a personal privilege. The privi-

lege does not permit an attorney to plead that his client might be incriminated by his testimony". The opinion goes on to state that, "(e)ven if it should be held that an attorney has standing to assert his client's Fifth Amendment privilege against self-incrimination, we would then have to decide if the client himself is shielded by the Fifth Amendment from compelled production . . .". *United States v. Haddad*, 6th Cir., 527 F.2d 537.

As to respondent's assertion that this material should be protected from enforcement of the summons on the basis that the material is the attorney's work product, there is no indication in the record that the material is the direct result of respondent's labor or efforts in preparation of materials for his clients' legal concerns. Rather, the material sought is merely information provided the respondent so as to inform him of his clients' situation.

The essence of this opinion was prepared and approved by the late Honorable Judge Rhodes Bratcher and directed by him to be put in final form prior to his death on July 25, 1977.